Gloria J. Brunckhorst NELSON, Plaintiff-Appellant,

v.

Paul R. DAVIDSON, American Home Assurance Company and State Farm Mutual Automobile Insurance Company, Defendants-Respondents. [Case No. 88-1769.]

Rachel PRITCHARD, in her own right, and as special administrator of the estate of Lynn L. Pritchard and Carolyn Pritchard, Plaintiffs-Appellants,

v.

Henry G. BAIER, American Home Assurance Company, and State Farm Mutual Automobile Insurance Company, Defendants-Respondents. [Case No. 88-1854.]

Supreme Court

*Nos. 88-1769, 88-1854. Argued March 6, 1990.—Decided June 14, 1990.*

(Also reported in 456 N.W.2d 343.)

For the plaintiff-appellant (in No. 88–1769) there were briefs (in court of appeals) by *Sverre O. Tinglum, Ardell W. Skow* and *Doar, Drill & Skow, S.C.*, Baldwin, and oral argument by *James Drill.*

For the defendants-respondents (in No. 88–1769) there was a brief (in court of appeals) by *Lawrence R.*

*King, Kim Z. Mastro* and *Murnane, Conlin, White, Brandt & Hoffman,* St. Paul, Minnesota, and oral argument by *Kim Z. Mastro.*

For the plaintiff-appellant (in No. 88-1854) there were briefs (in court of appeals) by *Sverre O. Tinglum, Ardell W. Skow* and *Doar, Drill & Skow, S.C.,* Baldwin, and oral argument by *James Drill.*

For the defendants-respondents (in No. 88-1854) there was a brief (in court of appeals) by *Lawrence R. King, Kim Z. Mastro* and *Murnane, Conlin, White, Brandt & Hoffman,* St. Paul, Minnesota, and oral argument by *Kim Z. Mastro.*

Amicus Curiae brief was filed (in No. 88-1854) by *Noreen J. Parrett* and *LaFollette & Sinykin,* Madison for Wisconsin Insurance Alliance, Professional Insurance Agents of Wisconsin, Independent Insurance Agents of Wisconsin and Wisconsin Association of Life Underwriters.

WILLIAM A. BABLITCH, J. The plaintiffs in these consolidated cases were involved in auto accidents where the negligent party had insufficient insurance to cover the damages. Prior to the accidents, both plaintiffs had obtained insurance coverage from State Farm Mutual Automobile Insurance Company (State Farm), but each lacked underinsured motorist (UIM) coverage. We accepted certification to determine whether an insurance agent owes an affirmative duty to advise its insureds of the availability or advisability of underinsured motorist (UIM) coverage. We conclude that absent special circumstances they do not. We therefore affirm the decisions of the circuit courts granting summary judgments in favor of the defendants.

Gloria Brunckhorst Nelson (Nelson) was involved as a passenger in a one-car accident in River Falls on

October 14, 1982. Nelson and her former husband had purchased casualty insurance coverage from State Farm through its agent, Paul Davidson (Davidson), for two cars with coverage to begin in 1980 and 1981. Nelson alleges by affidavit that she relied exclusively on Davidson for auto insurance information and that he offered advice to her on at least two occasions. Nelson also claims that she requested "the best coverage" available with respect to motor vehicle insurance, and that she was assured by one of Davidson's employees that she had the best coverage. Davidson denies that Nelson or her former husband ever discussed or requested underinsured motorist coverage, and further that he never held himself out as an insurance advisor, consultant, or specialist.

Rachel Pritchard (Pritchard) and her former husband Lynn were involved in a two car collision while riding with their daughter in Michigan on December 28, 1983. The Pritchards had purchased automobile insurance from State Farm agent, Henry Baier (Baier), since 1969. Prior to that time, they insured their automobiles with State Farm through Baier's predecessor. Lynn Pritchard made all decisions regarding auto insurance purchases for the family, and on at least one occasion purchased uninsured motorist coverage in excess of the limits mandated by statute. The Pritchards allege that they expected State Farm and its agents would provide them with reasonable and timely information and counsel regarding their family's automobile insurance requirements.

State Farm began marketing underinsured motorist (UIM) coverage in Wisconsin in January, 1982. At about that time, the company mailed a pamphlet to all Wisconsin insureds informing them about the availability of UIM coverage. These inserts were sent with semiannual

677

premium renewal notices as premiums became due in 1982. The pamphlet contained the following section regarding the availability of UIM coverage:

### Also New Coverage Available—Coverage W

To protect you from damages caused by underinsured motor vehicles, State Farm now offers Coverage W—Underinsured Motor Vehicle Coverage. Here's how Coverage W works: If the other driver is at fault in an accident and damages for injuries to you and your passengers exceed the amount that you receive from that driver's insurance company, your Underinsured Motor Vehicle Coverage takes over, up to the limits you choose.

The plaintiffs allege that they have no recollection of receiving the pamphlet, although they concede they may have. It is undisputed that neither party attempted thereafter to communicate with the other regarding the availability or scope of UIM coverage.

The plaintiffs subsequently commenced this suit for damages, alleging State Farm and its agents were negligent in failing to adequately inform them of the availability of UIM coverage. The defendants moved for summary judgments of dismissal, primarily on the ground that they had no duty to inform their insureds of the availability of UIM coverage, nor to recommend certain policy limits. In the alternative, the defendants argued that in any event they mailed notices of the availability of UIM coverage to all Wisconsin policyholders in early 1982, prior to the accidents.

The trial courts granted summary judgments in favor of the defendants and dismissed the actions. The trial courts concluded that an insurance agent has no affirmative duty under Wisconsin law to inform the

insured about available coverages, or to review existing coverage to determine whether coverage is adequate.

We accepted certification of the consolidated cases specifically to resolve whether an insurance agent has an affirmative duty to inform the insured regarding the availability of UIM coverage. We affirm the decisions of the trial courts granting summary judgment in favor of the defendants.

■

In Wisconsin, a plaintiff alleging a negligence cause of action is required to plead the four traditional elements of a tort: 1) a duty on the part of the defendant; 2) a breach of that duty; 3) a causal connection between the conduct and the injury; and 4) an actual loss or damage as a result of the injury. *Robinson v. Mt. Sinai Medical Center,* 137 Wis. 2d 1, 15, 402 N.W.2d 711 (1987); *Coffey v. Milwaukee,* 74 Wis. 2d 526, 531, 247 N.W.2d 132, 135 (1976). Therefore, in order for liability to exist in the present case, it must first be shown that the defendants had an affirmative duty to advise clients of the availability of UIM coverage.

■

This court on a number of occasions has discussed the somewhat elusive concept of "duty." In *Ollerman v. O'Rourke Co., Inc.,* 94 Wis. 2d 17, 27, 288 N.W.2d 95 (1980), we pointed out that the question of duty presents an issue of law, and that when the court resolves a question of duty the court is essentially making a policy determination. *See also Klassa v. Milwaukee Gas Light Co.,* 273 Wis. 176, 183-84, 77 N.W.2d 397 (1956) (discussing *Waube v. Warrington,* 216 Wis. 603, 258 N.W. 497 (1935)). Furthermore, we made clear in *Walker v. Bignell,* 100 Wis. 2d 256, 265, 301 N.W.2d 447 (1981), that the imposition of liability in a given situation is a question of policy whether the liability is regulated by

the notion of duty, or whether liability is cut off after all the elements of negligence have been established, as more recent cases of this court have stated. *See, e.g., Marciniak v. Lundborg*, 153 Wis. 2d 59, 450 N.W.2d 243 (1990); *Dumer v. St. Michael's Hospital*, 69 Wis. 2d 766, 774, 233 N.W.2d 372 (1975); *Rieck v. Medical Protective Co.*, 64 Wis. 2d 514, 517, 219 N.W.2d 242 (1974).

The plaintiffs refer us to no cases decided by a Wisconsin court holding that an insurance agent possesses an affirmative duty to advise a client regarding the availability or advisability of insurance coverage. Rather, they rely principally upon several cases from other jurisdictions holding that insurance agents have a duty to advise clients concerning the kind and extent of desired coverage, and to choose the appropriate insurance for the client. For example, in *Sobotor v. Prudential Property & Cas. Ins. Company*, 491 A2d 737, 742 (N.J. Super. A.D. 1984), the court stated that the inequality between the average purchaser of insurance and the insurance agent entitles the client, "untutored in the intricacies of insurance," to a broad measure of protections, including all information pertinent to the risk and desired coverage before the contract is issued. In *Dimeo v. Burns, Brooks & McNeil, Inc.*, 504 A.2d 557, 559 (Conn. App. 1986), the court stated that insurance is a specialized field with specialized knowledge and experience, and an agent has the duty to advise the client about the kind and extent of desired coverage and to choose the appropriate insurance for the client.

However, the vast majority of other jurisdictions hold that the general duty of care which an insurance agent owes a client does not include the obligation to advise of available coverages. These courts conclude that while it may be good business for an insurance agent to make such suggestions, and perhaps inquire into finan-

cial circumstances, the failure to do so does not constitute either negligence or breach of contract for which an insurer must answer in damages. Nor is the insured under an obligation to respond to the agent's questions. The seminal case on the issue, *Hardt v Brink,* 192 F. Supp. 879, 880, (W.D. Wash. 1961), states:

> Clearly, the ordinary insurance solicitor only assumes those duties normally found in any agency relationship. In general this includes the obligation to deal with his principal in good faith and to carry out his instructions. No affirmative duty to advise is assumed by the mere creation of an agency relationship.

Jurisdictions following this rule have delineated strong policy considerations which weigh against the imposition of any liability for failing to advise or provide plaintiffs with coverage. For instance, in *Dubreuil v. Allstate Ins. Co.,* 511 A.2d 300, 302 (R.I. 1986), the court observed that imposing liability on insurers for failure to advise clients of available coverage would remove any burden from the insured to take care of his or her own financial needs and expectations in entering the marketplace and choosing from the competitive products available. The court stated that adopting such a rule would transform insurance companies from a competitive industry " 'into personal financial counselors or guardians of the insured, a result we believe goes well beyond anything required by law or dictated by common sense.' " *Id.* (quoting *Gibson v. Government Employees Insurance Co.,* 162 Cal. App. 3d 411, 451–52, 208 Cal. Rptr. 511 (1984)).

Similarly, in *Suter v. Virgil R. Lee & Son, Inc.,* 754 P.2d 155, 157 (Wash. App. 1988), the court stated that ordinarily the insured knows the extent of his personal assets and his ability to pay better than the insurance

agent. Thus, the court concluded it is the insured's responsibility to advise the agent of the insurance he wants, including the limits of the policy to be issued. *Id.* (citing *Jones v. Grewe,* 189 Cal. App. 3d 950, 234 Cal. Rptr. 717, 721 (1987), *review denied,* May 14, 1987).

These courts have also noted the negative consequences to the insurance industry which would follow from liability. For example, the obvious extension of the rule advocated by the plaintiffs would subject insurance carriers to liability for failing to advise their own clients of every possible insurance option, or even an arguably better package of insurance offered by a competitor. Furthermore, the creation of a duty to advise could afford insureds the opportunity to insure after the loss by merely asserting they would have bought the additional coverage had it been offered. *See Polski v. Powers ,* 377 N.W.2d 106 (Neb. 1985); *Blonsky v. Allstate Ins. Co.,* 491 N.Y.S.2d 895 (Sup. 1985).

In the present case, the plaintiffs acknowledge the majority rule that generally an insurance agent does not have an affirmative duty to advise a client regarding the availability or adequacy of coverage. Nevertheless, they argue that a duty to advise clients as to the availability of insurance may arise when a statutory obligation or a special relationship arises between agent and buyer.

Regarding a statutory obligation, the court in *Pabitzky v. Frager,* 164 Cal. App. 3d 401, 210 Cal. Rptr. 426 (1985), stated that there is no duty on the part of an insurer to do more than to call the attention of the customer to the statutory requirements. *Id.* at 403. *See also Dubreuil,* 511 A.2d at 302. In Wisconsin, the legislature has long taken an active role in determining which insurance coverages must be provided or offered by insurance companies. The public policy of Wisconsin, as currently articulated by the legislature in sec. 632.32(4),

Stats, encompasses mandatory uninsured motorist and medical payment coverages. The legislature has considered mandatory UIM coverage during its last three sessions, *See* 1983 AB 276 and 1983 SB 141, 1985 AB 454, and 1987 AB 105, including the most recent session. *See* 1989 AB 47 and 1989 SB 24.

To date, the statutory duty expressed by the legislature does not encompass mandatory UIM coverage, and we hesitate to interfere in determining an area of broad public policy in which the legislature has assumed such an active role. If the defendants were found liable to the plaintiffs for failure to advise in the present case, the express and limited public policy of the state, established solely by the legislature on the dates the policy was issued and the injuries occurred, would be expanded by the judiciary. We conclude that if such a duty is to be imposed on the defendants, it should be imposed as a statutory one and not an implied judicial one.

It is more difficult to derive any absolute rule from the caselaw as to the requirements of a "special relationship." However, it is apparent that something more than the standard insured-insurer relationship is required in order to create a special relationship obligating the insurer to advise the policyholder concerning his or her insurance coverage. *Bruner v. League General Ins. Co.,* 416 N.W.2d 318 (Mich. App. 1987). Some courts require an express agreement, or a long established relationship of entrustment from which it clearly appears the agent appreciated the duty of giving advice, and compensation for consultation and advice was received apart from the premiums paid by the insured. *See, e.g., Sandbulte v. Farm Bureau Mut. Ins. Co.,* 343 N.W.2d 457 (Iowa 1984); *Gibson,* 162 Cal. App. 3d at 448–49; *Nowell v. Dawn-Leavitt Agency, Inc.,* 617 P.2d 1164, 1168 (Ariz. App. 1980); *Fleming v. Torrey,* 273 N.W.2d 169 (S.D.

1978). Other courts hold that a special relationship may be shown by an insurance agent who holds himself or herself out as being a highly-skilled insurance expert, coupled with the insured's reliance on the expertise of the agent to the insured's detriment. *See Hardt,* 192 F. Supp. at 881.

In the present case, the plaintiffs failed to set forth any facts that could establish such a relationship. The record does not indicate that State Farm or its agents expressly contracted to assume the duties of advisor or consultant, nor is there any evidence that the agents held themselves out as specialists or as highly skilled insurance experts. Moreover, neither agent received additional compensation for consultation or advice.

Pritchard alleges that she and her former husband expected State Farm and its agents would provide them with reasonable and timely information and counseling regarding their family's automobile insurance needs. However, as the defendants correctly point out, there is not even a mention of any representation made by the defendants that they would provide advice, much less on an ongoing basis. The mere allegation that a client relied upon an agent and had great confidence in him is insufficient to imply the existence of a duty to advise. The principal-agent relationship cannot be so drastically expanded unilaterally. *See Collegiate Mfg. Co. v. McDowell's Agency Inc,* 200 N.W.2d 854, 858 (Iowa 1972).

Nelson claims that she requested "the best coverage" available with respect to automobile insurance, and that she was assured by one of the agent's employees that she had the best coverage. However, there is no evidence that Nelson requested that such advice be continued on an ongoing basis, and there is no indication that State Farm offered UIM coverage at the time of

these requests. Indeed, Nelson did not even go so far as to contact the agent after the 1982 pamphlet introducing UIM coverage was mailed to all State Farm policyholders in Wisconsin. We decline to impose upon the agent an ongoing duty under these circumstances to advise an insured regarding coverage for an indefinite period of time.

Accordingly, we affirm the decisions of the trial courts granting summary judgment to the defendants. We conclude that an insurance agent has no affirmative duty under existing Wisconsin law, absent special circumstances, to inform an insured concerning the availability or advisability of UIM coverage.

*By the Court.*—Judgments affirmed.