Carole MEYER, individually and as Special Administrator of the Estate of Gerald Meyer, and Barbara Ann Meyer, a minor by her Guardian ad Litem, George H. Senteney, Plaintiffs-Appellants,†

v.

Nathan NORGAARD, American Family Mutual Insurance Company, and ABC Insurance Company, Defendants-Respondents.

Court of Appeals

No. 90-1773. *Submitted on briefs January 7, 1991.—Decided February 5, 1991.*

(Also reported in 467 N.W.2d 141.)

† Petition to review denied.

795

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *George H. Senteney* of *Guelzow, Senteney & Franson, Ltd.* of Eau Claire.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *Terrence M. Gherty* of *Gherty & Gherty, S.C.* of Hudson.

On behalf of the Wisconsin Academy of Trial Lawyers, the cause was submitted on the Amicus Curiae brief of *Bruce R. Bachhuber* of *Hanaway, Ross, Hanaway, Weidner, Garrity & Bachhuber, S.C.* of Green Bay.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Carole Meyer, individually and on behalf of her deceased husband, Gerald Meyer, and Barbara Ann Meyer appeal a summary judgment dismissing their claims against Nathan Norgaard, an agent of American Family Mutual Insurance Company, Ameri-

can Family Mutual Insurance Company and ABC Insurance Company, Norgaard's liability insurer. The Meyers claim that the trial court erred by concluding that Norgaard and American Family owed them no duty to advise them regarding the availability of uninsured motorist coverage greater than the $100,000 policy Norgaard sold them. The Meyers contend that Norgaard owed them a duty of reasonable care and that he breached this duty by failing to reasonably evaluate their needs and to advise them of the need for greater uninsured motorist coverage. The Meyers also contend that the insurance contract was reformed when Gerald requested and Norgaard failed to include the higher policy limits. Because Norgaard had no duty to inform the Meyers regarding the availability or advisability of higher uninsured motorist coverage and because the Meyers failed to submit evidence raising a genuine issue of material fact on the contract reformation claim, we affirm the grant of summary judgment.

In 1985, Norgaard sold Gerald an American Family automobile insurance policy, which Gerald renewed semi-annually through March 1989. This policy included limits of $300,000 liability per person and per accident; $300,000 property damage; and $100,000 per person and $300,000 per accident of uninsured motorist coverage. Gerald upgraded this policy to include underinsured motorist limits of $100,000 per person and $300,000 per accident when he purchased a new vehicle.

Carole alleges that she and her husband discussed getting "the best coverage we could" for their new car. However, Gerald, not Carole, consulted with Norgaard and purchased the insurance policy for the new car. Gerald was killed in a car accident with an uninsured driver while this policy was in effect. We will include additional facts as necessary.

The Meyers contend that Norgaard had a duty of reasonable care in advising Gerald regarding his insurance needs and that Norgaard breached that duty when he did not recommend the $300,000 uninsured motorist coverage that was available through American Family at a modest increase in premium cost. The question of the scope of Norgaard's duty to the Meyers presents an issue of law. *See Nelson v. Davidson,* 155 Wis. 2d 674, 679, 456 N.W.2d 343, 345 (1990). We decide such issues de novo. *First Nat'l Leasing Corp. v. City of Madison,* 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977). While insurance agents have a duty to act with reasonable care to their insureds, the nature of that duty does not impose upon the insurance agent the affirmative obligation, absent special circumstances, to inform about or recommend policy limits higher than those selected by the insured.

We begin our analysis with the lead case, *Nelson.* In that case, the court addressed the issue "whether an insurance agent has an affirmative duty to inform the insured regarding the availability of [underinsured motorist coverage]." *Id.* at 679, 456 N.W.2d at 345. The court followed the majority rule that the general duty of care includes the obligation to act in good faith and to carry out the insured's instructions but that the agency relationship creates no affirmative duty to advise. *Id.* at 681, 456 N.W.2d at 346 (citing *Hardt v. Brink,* 192 F. Supp. 879, 880 (W.D. Wash. 1961)).

The court noted that by resolving the question of duty the court makes a public policy determination, *Nelson,* 155 Wis. 2d at 679, 456 N.W.2d at 345, and listed numerous considerations in support of its holding. First, imposing liability on the insurer for failure to advise

insureds of available coverage relieves insureds of their obligation to take care of their own financial needs. The insured will generally know its financial needs and abilities better than will the insurance agent. Also, imposition of the duty to advise regarding various coverages may obligate the insurer to advise of all insurance options, arguably including those offered by competing companies. Finally, insureds would be able to assert that they would have purchased greater coverage had it been offered, thereby providing insureds the opportunity to insure after the loss. *Id.* at 679–80, 456 N.W.2d at 345.

While the court in *Nelson* reviewed a slightly different fact situation, that decision controls the outcome of this case. If an insurance agent has no affirmative duty to inform an insured of the availability of underinsured motorist coverage, an agent certainly has no duty to advise an insured regarding available uninsured motorist limits higher than those selected by the insured. All of the public policy concerns discussed in *Nelson* also support our conclusion in this case.

Gerald obtained American Family's Gold Star Policy, which provided $100,000 uninsured motorist coverage, more than four times the minimum required by Wisconsin statute. While additional coverage was available at a relatively small additional cost, Norgaard had no duty to inform Gerald of the availability or advisability of these higher limits. The amount of protection an insured wishes to obtain against any specific risk concerns the allocation of personal resources and is a matter that is uniquely within the province of the insured. The application form Gerald signed states that he selected the coverage in question. While higher policy limits were available, obtaining those limits involved increased costs. It was for the Meyers to determine whether additional protection was necessary and whether the addi-

tional premiums were justified by the need for such additional protection.

The Meyers attempt to distinguish *Nelson* by arguing that the *Nelson* court relied on the lack of a statutory obligation to obtain underinsured motorist coverage in reaching its conclusion. The *Nelson* court reasoned that if it were to create a duty on the agent to advise the insured concerning underinsured motorist coverage, it would interfere with the legislature, which has considered but rejected mandatory underinsured motorist coverage. *Id.* at 683, 456 N.W.2d at 347. The Meyers contend that because sec. 632.32(4)(a), Stats., requires auto insurance policies to contain uninsured motorist coverage, Norgaard had a duty to act reasonably regarding such coverage. While Norgaard may have had a duty of reasonable care, he had no duty to do more than advise Meyer of the statutory requirements. *See Nelson,* 155 Wis. 2d at 682, 456 N.W.2d at 346. The Meyers' policy contained limits four times the statutory requirement, and Norgaard had no duty to advise them of limits beyond their selected coverage.

The Meyers also contend that Norgaard's duty to advise them of the higher limits arose from the special relationship he had with them. The *Nelson* court allowed that special circumstances might create an exception to its holding but stated that "something more than the standard insured-insurer relationship is required in order to create a special relationship obligating the insurer to advise the policyholder concerning his or her insurance coverage." *Id.* at 683, 456 N.W.2d at 347. The court noted that other courts have found a special relationship when the parties had either an express agreement or a long-standing "relationship of

entrustment from which it clearly appears the agent appreciated the duty of giving advice" and the insured paid more than the premiums for this advice. *Id.* The court also cited *Hardt* as an example of a court that found a special relationship where the agent held himself out as a highly-skilled expert, and the insured relied on the agent's expertise to his detriment. *Nelson,* 155 Wis. 2d at 684, 456 N.W.2d at 347.

The Meyers contend that Norgaard assumed the duty of advising the Meyers on their insurance needs. The Meyers point out that Norgaard recommends coverage based on his individual assessment of his client's needs and periodically reviews those needs. However, these facts reflect a standard insurer-insured relationship, not a special relationship where the insured paid more than the premiums for special consultation and advice. *See id.* at 683, 456 N.W.2d at 347.

The Meyers maintain that Norgaard held himself out as a highly-skilled specialist and that Gerald relied on this expertise to his detriment. The Meyers misconstrue the nature of this special relationship exception to the majority rule. Not every specialist is subject to this exception. Rather, the specialization must be such that the agent promotes himself as an insurance consultant and assumes an obligation to advise the insured beyond that of the standard insurance agent. In *Hardt,* the court held that by his conduct and business practices the agent held himself out as a highly skilled insurance advisor and that the insured relied on him as such. *Hardt,* 192 F. Supp. at 881. There is no indication that Norgaard held himself out as a specialized insurance consultant or advisor. Norgaard promoted himself as a "family and business insurance specialist." It cannot be inferred from such an advertisement that Norgaard was a highly skilled insurance advisor willing to accept responsibili-

ties beyond that of a normal insurance agent. Absent such a showing, Norgaard assumed no duty to advise Gerald concerning his insurance policy.

Finally, the Meyers argue that they raised a genuine issue of material fact regarding their contract reformation claim. A written agreement may be reformed if based on mutual mistake or the mistake of one party and the fraud of the other. *State Bank of La Crosse v. Elsen,* 128 Wis. 2d 508, 513, 383 N.W.2d 916, 918 (Ct. App. 1986). Carole contends that although she never had specific conversations with Norgaard, she and Gerald decided they wanted the best available coverage. The Meyers argue that from this a jury could infer that Gerald requested the highest limits and Norgaard failed to honor that request.

However, the best available insurance coverage does not automatically mean the highest policy limits. "Best" is a subjective term involving the balancing of premium dollars with the protection sought. Insurance policies are reviewed actuarily so that the risk and increased cost are proportionate. No evidence supports the Meyers' claim that they ordered coverage higher than the policy limits obtained. The trial court accordingly properly granted summary judgment on this issue.

*By the Court.*—Judgment affirmed.