Christa H. TACKES and Dalvine Tackes, Plaintiffs-Appellants,†

v.

MILWAUKEE CARPENTERS DISTRICT COUNCIL HEALTH FUND and Claim Management Services, Inc., Defendants,

UTICA MUTUAL INS. CO., a foreign corporation, and Paul A. Albinger, d/b/a Paul A. Albinger Agency, Defendants-Third Party Plaintiffs-Respondents-Cross Appellants,††

v.

Christa H. TACKES and Dalvine Tackes, Third Party Defendants,

WISCONSIN FARMERS MUTUAL INSURANCE COMPANY, Third Party Defendant-Cross Respondent.

Court of Appeals

*No. 91-0267. Submitted on briefs August 6, 1991.—Decided September 24, 1991.*

(Also reported in 476 N.W.2d 311.)

†Petition to review filed.

††Petition to cross review filed.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Gary R. Kuphall* and *Virginia M. Antoine* of *Habush, Habush & Davis, S.C.* of Milwaukee.

On behalf of the defendants-third party plaintiffs-respondents-cross appellants, the cause was submitted on the briefs of *Burton A. Strnad* of *Burton A. Strnad, S.C.* of Milwaukee.

On behalf of the third party defendant-cross respondent, the cause was submitted on the briefs of *John M. Swietlik* and *Vicki L. Arrowood* of *Kasdorf, Lewis & Swietlik, S.C.* of Milwaukee.

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J. Christa H. Tackes was injured in an automobile accident. The person causing the accident was insured for $25,000. Tackes claims injuries far exceeding that amount, and sues her insurance agent, Paul A. Albinger, and his liability insurer, Utica Mutual Insurance Company.

At the time of the accident, Christa and Dalvine Tackes owned two automobiles insured by Wisconsin Farmers Mutual Insurance Company. The Tackes allege that Albinger negligently failed to advise them to

710 .

purchase underinsured motorist coverage. They claim that they would have purchased $100,000 worth of underinsured motorist coverage for each car, a total of $200,000, if Albinger had only so suggested. The trial court held as a matter of law that Albinger was not liable and granted summary judgment to him and Utica. The Tackes appeal. We affirm.[1]

Summary judgment may not be granted if there are genuine issues of material fact. Rule 802.08(2), Stats. Conversely, summary judgment is required if either the facts are not disputed and a party is thereby entitled to judgment as a matter of law or, if there are disputed facts, the dispute is not material to the legal issue on which summary judgment is sought. *See* Rule 802.08(2) and (6), Stats. Accordingly, since the Tackes and Albinger differ over some aspects of their relationship, we must assume that the Tackes' version is true in assessing Albinger's entitlement to summary judgment. We make this assessment *de novo*. *See Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987).

It is the law of this state that, "absent special circumstances," an insurance agent does not owe an affirmative duty to advise his or her customers on either the availability or desirability of underinsured motorist coverage. *Nelson v. Davidson,* 155 Wis. 2d 674, 676, 456 N.W.2d 343, 344 (1990).[2] The reasons are clear. First, "imposing liability on insurers [or insurance agents] for

---

[1] Albinger and Utica cross-appeal from the trial court's dismissal of their third-party complaint against Wisconsin Farmers. In light of our resolution of the Tackes' appeal, the issues presented by the cross-appeal are moot.

[2] The same rule applies to uninsured motorist coverage.

failure to advise clients of available coverage would remove any burden from the insured to take care of his or her own financial needs and expectations in entering the marketplace and choosing from the competitive products available." *Id.,* 155 Wis. 2d at 681, 456 N.W.2d at 346. Second, to place such an affirmative duty on insurance companies and agents would subject them "to liability for failing to advise their own clients of every possible insurance option, or even an arguably better package of insurance offered by a competitor." *Id.,* 155 Wis. 2d at 682, 456 N.W.2d at 346. Third, and perhaps most significant, "the creation of a duty to advise could afford insureds the opportunity to insure after the loss by merely asserting they would have bought the additional coverage had it been offered." *Ibid.*

Nothing, of course, prevents an insurance agent from specifically undertaking a duty to advise clients on insurance matters. *See id.,* 155 Wis. 2d at 683–684, 456 N.W.2d at 347. The hallmark of such an undertaking, however, is the normal currency of commerce: consideration—either monetary or otherwise. *See id.,* 155 Wis. 2d at 683, 456 N.W.2d at 347 ("Some courts require an express agreement, or a long established relationship of entrustment from which it clearly appears the agent appreciated the duty of giving advice, and compensation for consultation and advice was received apart from the premiums paid by the insured."). By the same token, even though the insurance agent does not receive extra monetary remuneration for advice, special expertise may be offered as way of attracting business that might not otherwise patronize a mere purveyor of standard products. *See id.,* 155 Wis. 2d at 684, 456 N.W.2d at 347

*Meyer v. Norgaard,* 160 Wis. 2d 794, 800, 467 N.W.2d 141, 143 (Ct. App. 1991).

712

("Other courts hold that a special relationship may be shown by an insurance agent who holds himself or herself out as being a highly-skilled insurance expert, coupled with the insured's reliance on the expertise of the agent to the insured's detriment."). Whether the insurance agent has undertaken a duty to advise that extends beyond the normal agent/insured relationship is a legal matter that we decide *de novo. Id.,* 155 Wis. 2d at 679, 456 N.W.2d at 345; *Meyer,* 160 Wis. 2d at 798, 467 N.W.2d at 142.

The Tackes' brief on appeal concedes that "there was no express agreement that Albinger would provide insurance advice to Tackes" and that "other than the commissions he received from premiums, Albinger did not receive any compensation from Tackes for any insurance consulting work." Nevertheless, they claim that the following circumstances create a factual issue as to whether Albinger assumed a duty to advise them on the benefits of underinsured motorist coverage and that summary judgment was therefore inappropriate:

> Albinger was an independent insurance agent;

> the Tackes' contention that Albinger's advertisements in a West Bend newspaper and telephone directory portrayed him as an insurance expert;

> Albinger's membership in an association, Professional Insurance Agents of Wisconsin, whose code of ethics asserts that members "will thoroughly analyze the insurance needs of [their] clients and recommend forms of indemnity best suited to those needs, regardless of the measure of profit to myself" [capitalization in original deleted]; and

> The Tackes' reliance on Albinger's expertise in buying automobile insurance.

713

None of these circumstances, either individually or collectively, permit the imposition of liability on Albinger for his failure to advise the Tackes to purchase underinsured motorist coverage.

1. *Albinger's status as an "independent" insurance agent.* At the time he sold the Tackes insurance, Albinger represented nine carriers. The Tackes point out that the insurance agent in *Nelson* represented but one carrier, *see Nelson,* 155 Wis. 2d at 677, 456 N.W.2d at 344, and argue that, unlike the situation in *Nelson,* Albinger was acting as *their* agent and therefore owed them a special duty to volunteer advice on every aspect of their insurance needs irrespective of whether they inquired about a particular risk or coverage. We disagree.

First, as an "independent" agent, Albinger represented but a few of the many companies selling automobile insurance. Accordingly, one of the factors noted by *Nelson* that militates against imposing an open-ended duty to advise attends here as well; namely, it is inappropriate to impose liability on an insurance agent for failing to recommend "an arguably better package of insurance offered by a competitor." *Id.,* 155 Wis. 2d at 682, 456 N.W.2d at 346. Second, Albinger's status as an "independent" agent is hardly unique; there are many independent agents in Wisconsin. The rule championed by the Tackes would impose potential liability on every independent agent for the failure to volunteer advice, and would thus largely eviscerate, for a significant segment of the industry, *Nelson*'s balancing of public-policy interests. As a matter of law, Albinger's status as an "independent" agent does not therefore constitute a "special circumstance" under *Nelson. Cf. id.,* 155 Wis. 2d at 683, 456 N.W.2d at 347 ("[S]omething more than the standard insured-insurer relationship is required in

order to create a special relationship obligating the insurer to advise the policyholder concerning his or her insurance coverage.").

2. *Albinger's representations as to his expertise.* Albinger advertised in a West Bend newspaper and in the telephone directory serving the West Bend area. The telephone directory advertisement proclaims that Albinger's agency offers "insurance of all kinds," and, in quotation marks, that " 'after the sale it is the service that counts.' " (Capitalization in original deleted.) Although the newspaper advertising is not part of the appellate record, Albinger testified in a deposition considered by the trial court in connection with Albinger's motion for summary judgment that the newspaper advertisements were substantially similar to the one in the telephone directory. Clearly, Albinger's advertisements did not represent that he was "a highly-skilled insurance expert," as that phrase is used in *Nelson. See id.,* 155 Wis. 2d at 684, 456 N.W.2d at 347.

3. *The association's code of ethics.* Professional Insurance Agents of Wisconsin is a voluntary association of agents. In essence, the Tackes contend that the general language in the association's code of ethics that members will "thoroughly analyze the insurance needs of [their] clients and recommend the forms of indemnity best suited to those needs" operates to impose liability on an agent who, as did Albinger, recognizes that responsibility but who allegedly falters on either aspect of the pledge. We do not agree.

First, unlike standards of professional conduct imposed by law, *see, e.g.,* SCR ch. 20, Rules of Professional Conduct for Attorneys, the association's code merely is an exhortatory expression of common ideals.

715

Even if the code's principles were standards of professional conduct imposed by law, however, they would not thereby establish standards of care unless that was intended " 'by language that is clear, unambiguous, and peremptory.' " See *Peck v. Meda-Care Ambulance Corp.,* 156 Wis. 2d 662, 670, 457 N.W.2d 538, 542 (Ct. App. 1990) (The Rules of Professional Conduct for Attorneys and its predecessor, the Code of Professional Responsibility, do not define standards of care for purposes of civil liability.) (citation omitted). Accordingly, even if the Tackes are correct, and Albinger violated the association's code of ethics, that fact would not result in his liability. Second, as with the Tackes' argument that Albinger's status as an independent agent was a "special circumstance" under *Nelson,* Albinger's membership in a voluntary association of agents is also not unique. Thus, his membership in the association is not a "special circumstance" under *Nelson.*

4. *The Tackes' reliance on Albinger's expertise.* In support of their argument that Albinger should be liable for his failure to recommend underinsured motorist coverage, the Tackes point out that Albinger advised them on other aspects of their insurance needs. Thus, Albinger recommended that the Tackes change companies when their carrier raised rates, but suggested that they wait until the new year when Mr. Tackes' driving record for the relevant rating period would improve. Albinger also informed the Tackes the extent to which Wisconsin Farmers Mutual would cover their use of a rental car. The Tackes claim that Albinger was thus acting as an "insurance advisor" and that they "relied on his advice." As we recently explained, however, the mere fact that an agent "recommends coverage based on his individual assessment of his client's needs and periodically reviews

those needs," is not a "special circumstance" as that term is used in *Nelson. Meyer,* 160 Wis. 2d at 801, 467 N.W.2d at 144. Rather, the agent must have presented himself as a highly-skilled specialist—an "insurance consultant" who thereby "assumes an obligation to advise the insured beyond that of the standard insurance agent." *Ibid.* Accepting the facts as the Tackes present them, Albinger was not their "insurance consultant." Additionally, although *Nelson*'s bar to liability will not apply if "the parties had either an express agreement or a long-standing 'relationship of entrustment from which it clearly appears the agent appreciated the duty of giving advice' *and* the insured paid more than the premiums for this advice," *id.,* 160 Wis. 2d at 800–801, 467 N.W.2d at 143 (quoting *Nelson,* 155 Wis. 2d at 683, 456 N.W.2d at 347 (emphasis added)), these elements are admittedly not present here.

In conclusion, the Tackes' dealings with Albinger reveal nothing more than the "standard insured-insurer relationship." *See Nelson,* 155 Wis. 2d at 683, 456 N.W.2d at 347. Accordingly, Albinger did not have a duty to advise them about their insurance needs.

*By the Court.*—Judgment affirmed; cross-appeal dismissed.