LISA'S STYLE SHOP, INC., Plaintiff-Appellant,

v.

HAGEN INSURANCE AGENCY, INC., Steve Hagen, and Employers Reinsurance Corporation, Defendants-Respondents.†

Court of Appeals

*No. 91–1965. Submitted on briefs April 23, 1992.—Decided March 11, 1993.*

(Also reported in 499 N.W.2d 921.)

†Petition to review granted.

For the plaintiff-appellant the cause was submitted on the briefs of *James D. Wickhem* of *Meier, Wickhem, Southworth & Lyons, S.C.* of Janesville.

For the defendants-respondents the cause was submitted on the brief of *Susan R. Tyndall* and *John V. McCoy* of *Hinshaw & Culbertson* of Milwaukee.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

SUNDBY, J.    Lisa's Style Shop, Inc. ("Lisa's"), is a clothing store that suffered extensive fire loss November 29, 1987, during its peak inventory season. It was significantly underinsured for inventory loss and brought this negligence action against its insurance agent, Steven Hagen, his agency, and his errors and omissions insurer, Employers Reinsurance Corporation (collectively, "Hagen"). The circuit court concluded that Hagen did not owe a duty to Lisa's to advise it as to its inventory coverage, and granted Hagen's motion for summary judgment.

We conclude that by placing coverage with a different insurer without Lisa's knowledge, Hagen assumed a duty to Lisa's to advise it as to the effect of the change in coverage. It is undisputed that Hagen violated that duty and that Lisa's was damaged by Hagen's breach. Because there are no genuine issues of material fact to be tried, Lisa's is entitled to judgment as a matter of

law, subject to a determination of its damages. We reverse the judgment and remand the case to the trial court for further proceedings consistent with this opinion.

Lisa's is a women's clothing store which has operated in Janesville, Wisconsin, since 1958. Barbara Adamany is president of the company and its sole shareholder. Her husband operated the business until his death. He purchased property damage insurance, including inventory coverage, from the Maas Agency in Evansville, Wisconsin.

Hagen bought the agency in 1976 and operated it under the Maas name until June 1982, when he renamed the agency the Hagen Insurance Agency. Hagen became involved with Lisa's account in March 1981. He placed insurance with Heritage Insurance Company and obtained inventory coverage of $36,000. The policy was routinely renewed annually on the same terms. However, in 1985, without consulting Adamany, Hagen changed carriers from Heritage to Home Mutual Insurance Company, also known as Secura Insurance Company, to avoid a premium rate increase.

The Home Mutual policy was termed a "Business Protector Policy," which gave Lisa's twenty-five percent more coverage if it maintained 100 percent coverage on the average dollar amount of personal property (inventory) for the previous twelve months. The purpose of the provision was to allow for seasonal variations in inventory values. Hagen did not discuss this provision with Adamany, but denies that there is any evidence in the record that such coverage was not simply a continuation of a Heritage policy provision.

Lisa's has provided us with a copy of the Heritage policy and moves the court to take judicial notice of the

fact that the policy does not contain "seasonal varia-
tion" or "peak season" coverage. Alternatively, it moves
the court to include the Heritage policy as part of the
appellate record, pursuant to sec. 809.15(3), Stats.
From our review of the material presented on Hagen's
motion for summary judgment, we conclude the only
permissible inference is that the peak season or sea-
sonal variation inventory coverage was new coverage
provided in Home Mutual's policy and not provided in
Heritage's policy. We need not take judicial notice of
the Heritage policy or add it to the appellate record to
establish this fact. Therefore, we deny Lisa's motion.

Because there are no other genuine issues of mate-
rial fact, there remains only the question whether
Hagen owed Lisa's a duty to inform it of the existence
and effect of the new coverage. The question of duty
presents an issue of law. *Nelson v. Davidson*, 155 Wis.
2d 674, 679, 456 N.W.2d 343, 345 (1990).

We will explain our conclusion that Hagen owed a
duty to Lisa's to inform it of the existence and effect of
the peak season or seasonal variation inventory cover-
age. However, we first examine the materials
presented on summary judgment to determine
whether there is a *genuine* issue of fact as to whether
the peak season or seasonal variation inventory cover-
age was new coverage in Home Mutual's policy.

On summary judgment, the moving party, in this
case Hagen, must establish the absence of a genuine
issue as to any material fact. *Grams v. Boss*, 97 Wis. 2d
332, 338, 294 N.W.2d 473, 477 (1980). Hagen asserts
that whether the peak season or seasonal variation
inventory coverage was new coverage provided in the
Home Mutual policy is not an issue because Lisa's did

not submit the policy to the trial court. However, in the trial court, Hagen did not deny that the Home Mutual policy contained such coverage and did not claim that the coverage was merely a continuation of previously existing coverage in Heritage's policy. At the hearing on Hagen's motion for summary judgment, the following exchange occurred between the trial court and counsel for Hagen:

THE COURT: Well, how about the argument that the new policy or the Home Mutual policy contained an added benefit if the inventory was insured basically at 100 percent? Is this something that an agent, having gotten the policy in cooperation would have an obligation to explain, especially in light of the fact that the figure for inventory had remained the same for all of these years?

MR. MCCOY: The policy was changed in 1985. The affidavit submitted by my agent indicates that there was no—the change was not made to take advantage of this provision in the policy. It was not, let's say, an endorsement that you would procure in addition to the typical business protector's policy. And so when changing from one company to another, that was not a consideration. It was simply changing [an] order to obtain a better premium.

The duty to discuss that policy—I don't believe there's any language that there is a duty to discuss the language of the policy and that failure to do that somehow imposes upon the insurance agent some standard that has anything to do with insurance coverage.

Thus, in response to a direct question from the court, Hagen's counsel did not deny that the Home Mutual policy contained an added benefit in the form of peak season or seasonal variation inventory coverage. He acknowledged that the policy was changed in 1985.

If the new policy was merely a continuation of existing coverage, Hagen's counsel had a duty to so advise the court in response to its direct question. Hagen could not evade the court's question and on appeal rely on that evasion. Hagen's position was not that there was no change in coverage, but simply that he had no obligation to discuss changes in the policy with the insured, even though the new policy was obtained without knowledge or consent by the insured. We reject Hagen's view of his duty to his client.

At Hagen's deposition, he was examined with respect to his knowledge of the provisions of Home Mutual's Business Protector Policy.[1] Part II, Section 6(b) of the Home Mutual Agent's Manual regarding Business Protector policies explains:

> All Business Protector Policies include a "peak season" feature which increases personal property coverage by 25% providing that the Personal Property Coverage limit is written at 100% of the average personal property values for the past 12 months. To be sure this important benefit remains available to the policyholder, coverage should be purchased for at least 100% of anticipated average monthly values. *The adequacy of personal property limits should be reviewed annually.* [Emphasis added.]

In his deposition, Hagen was asked the following question and gave the following answer:

---

[1] Hagen correctly states in his brief that neither policy is part of the record. However, this does not preclude us from determining that significant differences in coverage existed between the two policies, based on the record which is before this court.

Q. Do you attempt to follow the guidelines set down by the companies about renewals such as shown on Exhibit No. 3 [Business Protector Program]?

A. [I] guess I want to review those. . . . We are talking [about] two different companies. This is Secura's [Home Mutual's] rules and we are talking Heritage's policy.

The only reasonable inference which can be drawn from Hagen's answer is that he claimed that there were differences between Heritage's policy and Home Mutual's policy.

Hagen was also examined as to his knowledge of the peak season coverage provided by Home Mutual's policy. He admitted that he did not ask Adamany for inventory figures at any time between the time he received Home Mutual's explanation of its Business Protector Program and the date of Lisa's loss. It is also evident from his deposition testimony that Hagen was unfamiliar with provisions of commercial insurance policies designed to protect businesses whose inventories fluctuated. He testified that the insurance he provided for businesses with inventories was a relatively small percentage of his business.

As to peak season coverage, Hagen was asked the following questions and gave the following answers:

Q. [B]ack in 1985 was there another coverage that was available called peak season coverage?

A. I believe that it is in the manual pages there was one, yes.

Q. In fact, the policy that was written for Mrs. Adamany had peak season coverage, did it not?

A. I believe it had peak season coverage in it.

Q. Could you explain to me what peak season coverage is?

A. *As I understand the peak season*, that during certain times of the year you would have more contacts than you would other times of the year.

. . . .

Q. [A]re there certain conditions before that coverage will apply?

A. *As I understand the peak season endorsement*, they look at your past year's inventory to determine if you are at 100 percent—if you are insured for that amount and base the peak season on that.

. . . .

Q. Did you ever explain that coverage to Barb Adamany before this fire?

A. I don't recall specifically talking about that coverage.

Q. Did you ever warn Barb Adamany that her coverage limit had to be 100 percent for the average value for the preceding 12 months before loss?

. . . .

A. [I] don't recall discussing that.

. . . .

Q. Did you ever advise her to keep an eye on the value of her inventory?

A. I don't recall that I did.

Q. Did you ever tell her that it was important that she keep an eye on the value of her inventory for purposes of peak season coverage?

A. I don't recall specifically for peak season coverages. [Emphasis added.]

If the Heritage policy contained peak season or seasonal variation inventory coverage, Hagen was plainly unaware of that fact. We conclude that the only reasonable inference from Hagen's testimony is that he believed that the peak season or seasonal variation inventory coverage was added by the Home Mutual policy.

171

Hagen also claims, however, that he had no duty to Lisa's to advise it as to inventory insurance coverage. He cites *Nelson v. Davidson*, 155 Wis. 2d 674, 456 N.W.2d 343 (1990), *Tackes v. Milwaukee Carpenters Dist. Council Health Fund*, 164 Wis. 2d 707, 476 N.W.2d 311 (Ct. App. 1991), and *Meyer v. Norgaard*, 160 Wis. 2d 794, 467 N.W.2d 141 (Ct. App. 1991). In *Nelson*, the court concluded that in the absence of special circumstances, an insurance agent has no duty to inform the insured as to the availability or advisability of obtaining underinsured motorist coverage. The court said: "[I]t is apparent that something more than the standard insured-insurer relationship is required in order to create a special relationship obligating the insurer to advise the policyholder concerning his or her insurance coverage." 155 Wis. 2d at 683, 456 N.W.2d at 347. In *Meyer*, we held that the insurance agent did not have a duty to inform the insured of the availability or advisability of obtaining increased uninsured motorist coverage. In *Tackes*, we said that in order to constitute a "special circumstance," as that term is used in *Nelson*, "the agent must have presented himself as a highly-skilled specialist—an 'insurance consultant' who thereby 'assumes an obligation to advise the insured beyond that of the standard insurance agent.' " 164 Wis. 2d at 717, 476 N.W.2d at 315.

These cases are readily distinguishable from the case before this court because different policy considerations are present. When a court resolves a question of duty, the court is essentially making a policy determination. *Nelson*, 155 Wis. 2d at 679, 456 N.W.2d at 345. In *Nelson*, the court rejected a rule which would impose liability on insurance agents for failing to advise clients "entering the marketplace" as to the competitive products available. *Id.* at 681, 456 N.W.2d at 346. The court

said that adopting such a rule would transform insurance companies from a competitive industry into personal financial counselors or guardians of the insured. *Id.*

No such policy concerns are present here. Lisa's was not entering the insurance marketplace. It did not choose among the competitive products available; Hagen made the choice for Lisa's. At the least, Hagen assumed a duty to advise Lisa's as to the coverage he obtained on its behalf so that Lisa's could make the choice as to whether it would avail itself of that coverage.

It is undisputed that Hagen did not inform Lisa's that he had obtained peak season or seasonal variation coverage for its inventory and did not explain the effect of that coverage. Hagen assumed a duty to advise Lisa's; Hagen breached his duty to Lisa's; there is a causal connection between his conduct and Lisa's injury; and Lisa's was damaged. Lisa's is therefore entitled to summary judgment, interlocutory in character, on the issue of liability. *Nelson,* 155 Wis. 2d at 679, 456 N.W.2d at 345; sec. 802.08(2), Stats.; sec. 802.08(6), Stats. Lisa's damages remain to be determined on remand for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded with directions.