LISA'S STYLE SHOP, INC., Plaintiff-Appellant,

v.

HAGEN INSURANCE AGENCY, INC., Steve Hagen and
Employers Reinsurance Corporation, Defendants-
Respondents-Petitioners.

Supreme Court

*No. 91–1965. Oral argument January 6, 1994.—Decided
February 22, 1994.*

(Also reported in 511 N.W.2d 849.)

For the defendants-respondents-petitioners there were briefs by *Susan R. Tyndall, John V. McCoy* and *Hinshaw & Culbertson,* Milwaukee and oral argument by *Susan R. Tyndall.*

For the plaintiff-appellant there was a brief by *James D. Wickhem* and *Meier, Wickhem, Southworth & Lyons, S.C.,* Janesville and oral argument by *James D. Wickhem.*

Amicus curiae brief was filed by *J. Steven Tikalsky* and *Tikalsky, Raasch & Tikalsky,* Waukesha for the Civil Trial Counsel of Wisconsin.

STEINMETZ, J.   The issue in this case is: Did the independent insurance agent, Steve Hagen (Hagen), have a duty to advise his continuing client, Lisa's Style Shop (Lisa's), to adjust the limits of liability of Lisa's personal property insurance to reflect changes in the store's inventory? The circuit court for Rock county, the Honorable Michael J. Byron, dismissed Lisa's claim holding that Hagen had no such duty. The court of appeals reversed. *Lisa's Style Shop v. Hagen Ins. Agency,* 176 Wis. 2d 164, 173, 499 N.W.2d 921 (Ct. App. 1993). The court held that Hagen assumed a duty to Lisa's, and breached that duty, when he switched insurance companies and obtained a new benefit for his client without explaining the effect of the new coverage to Lisa's president, Barbara Adamany (Mrs. Adamany). We now reverse the decision of the court of appeals and hold that Hagen had no duty to advise Lisa's to increase the limits of its insurance coverage for personal property.

Lisa's is a women's clothing store in Janesville that has been in operation since 1958. Mrs. Adamany's late husband opened Lisa's and operated it until his

567

death. Since that time, Mrs. Adamany has served as Lisa's president and sole shareholder. Lisa's was incorporated in 1982. Mrs. Adamany takes inventory of the store once a year and her accountant provides her with a quarterly report on Lisa's financial status. Her brothers, Bill and Bob Brunsell, are respectively the vice president and secretary of the corporation. Neither of them plays an active role in the operation of Lisa's.

Mr. Adamany purchased insurance for Lisa's from the Maas Agency. In 1976, Hagen purchased the Maas Agency. He operated it under that name until June, 1982 when he renamed it the Hagen Insurance Agency. Lisa's continued to purchase insurance through this agency after the 1976 change in ownership.

Hagen has been a licensed insurance agent in Wisconsin since 1976 when he passed an examination required by the state. He is an independent agent. Unlike a captive agent who works for one insurance company and can only sell its products, Hagen represents several insurers and can place his clients' business with any of those companies. Hagen is a member of two national organizations of insurance agents—the Professional Insurance Agents (PIA) and the Independent Insurance Agents (the Big I). He uses the emblem of the Big I, with the phrase "serves you first" in advertisements for his insurance agency in local newspapers and phone books. In addition, he benefits from the Big I's national advertising campaigns.

Hagen began personally servicing Lisa's account in 1981. After some initial contact with Bill Brunsell, Hagen dealt exclusively with Mrs. Adamany. In March, 1981, he renewed a policy for Lisa's with Heritage Insurance Company (the Heritage policy) that included inventory or personal property coverage with a $36,000

liability limit. He continued to renew that policy with the same limits for the next four years.

In 1985, Heritage dramatically increased its premiums. As was his standard practice, Hagen secured quotes from other insurance companies without contacting Mrs. Adamany to see if he could obtain the same coverage for Lisa's at a better rate. He found substantially the same coverage at a much better rate with Home Mutual Insurance Company (Home Mutual).[1] He then changed Lisa's carrier from Heritage to Home Mutual, maintaining the $36,000 limit on liability for damage to inventory. The record is unclear as to whether Hagen consulted with Mrs. Adamany before making this change.[2]

Neither party disputes that the Home Mutual policy provided substantially the same personal property coverage as its predecessor. In addition, it included a peak season endorsement that was not present in the

---

[1] Home Mutual later changed its name to Secura Insurance Company. This opinion will refer to the insurance company as Home Mutual throughout.

[2] At his deposition, Hagen testified that he did not remember whether he contacted Mrs. Adamany before making this change. In a later affidavit, Hagen stated that, to the best of his recollection, he changed insurers after consultation with Mrs. Adamany. He also stated that he has never changed insurance coverages for a client without the client's prior consent. Mrs. Adamany never explicitly denied that Hagen consulted with her before changing insurers. Rather, in an affidavit, she quoted Hagen's deposition testimony as evidence that he never consulted with her before changing carriers. In reviewing this motion for summary judgment, we will view this factual discrepancy in the light most favorable to the party opposing the motion, Lisa's. *See Grams v. Boss,* 97 Wis. 2d 332, 339, 294 N.W.2d 473 (1980). Hence, we will assume that Hagen did not consult with Mrs. Adamany before changing insurers.

Heritage policy.[3] Home Mutual charged no additional premium for this extra coverage. This peak season endorsement allowed the insured to collect up to an additional 25 percent above the policy limits if the insured's inventory was damaged at those times of the year when the inventory was at its peak. However, this bonus coverage was only available if the insured maintained coverage for the total value of its average inventory. The $36,000 limit in Lisa's policy did not represent the average total value of Lisa's inventory.

Between 1981—when Hagen began working on Lisa's account—and the commencement of this lawsuit, representatives of Lisa's requested two changes in coverage. First, Mrs. Adamany asked Hagen to secure coverage doubling the limits for business liability. Second, some representative of Lisa's requested that the glass coverage be deleted. At no time did any representative of Lisa's request that Hagen increase the limits on the personal property coverage. Throughout this period, Hagen received no compensation for handling Lisa's account beyond the commissions paid to him directly by the insurance companies.

On November 29, 1987, a fire destroyed the inventory at Lisa's. Lisa's was significantly underinsured for personal property damage and suffered a loss well in excess of the $36,000 inventory liability limit in the

---

[3] The Heritage policy is not before the court. Hagen claims that this court should assume that the Heritage policy contained a peak season endorsement. Lisa's argues that we should assume just the opposite. Once again, in reviewing this motion for summary judgment, we will view this factual discrepancy in the light most favorable to the party opposing the motion, Lisa's. *See Grams,* 97 Wis. 2d at 339. Hence, we will assume that the Heritage policy did not contain a peak season endorsement.

Home Mutual policy. Because Lisa's was not insured for the full value of its average inventory, it could not benefit from the peak season endorsement in the policy.

Lisa's brought an action in the circuit court for Rock county against Hagen, the Hagen Insurance Agency and Employers Reinsurance Corporation, claiming that Hagen was negligent in failing to procure adequate limits of insurance to cover damage to Lisa's inventory. Hagen moved for summary judgment. The circuit court granted Hagen's motion. Basing its decision on *Nelson v. Davidson,* 155 Wis. 2d 674, 456 N.W.2d 343 (1990), the court held that Hagen did not have a duty to advise Lisa's that the inventory policy limits of its insurance were inadequate.

The court of appeals reversed, holding that when Hagen changed insurance carriers, he assumed a duty to advise Lisa's of the effect of this change in coverage. *Lisa's,* 176 Wis. 2d at 173. The court also found, as a matter of law, that Hagen breached this duty. Hence, the court of appeals remanded the cause to the circuit court with instructions to grant summary judgment for Lisa's. We granted Hagen's petition for review to determine whether Hagen owed this duty to Lisa's.

When reviewing a circuit court's decision on a motion for summary judgment, this court applies the same methodology in the same manner as the trial court. *Robinson v. Mt. Sinai Medical Center,* 137 Wis. 2d 1, 14, 402 N.W.2d 711 (1987). We first conclude, as both lower courts did, that the plaintiff has stated a claim for negligence. We next decide whether any factual issues exist and whether the defendant is entitled to judgment as a matter of law. *Id.* at 15. No factual

issues exist that would preclude this court from finding that granting summary judgment is appropriate.

■

Lisa's claims that Hagen was negligent in not advising Lisa's concerning the limits of its inventory insurance coverage. "The elements in a cause of action for negligence are: 1) a duty of care on the part of the defendant; 2) a breach of that duty; 3) a causal connection between the conduct and the injury; and 4) an actual loss or damage as a result of the injury." *Id.* Lisa's must be able to prove all four of these elements or its claim will fail. Hence, if this court finds that Hagen did not have a duty, as a matter of law, to advise Lisa's regarding the liability limits of its personal property insurance, then we must reverse the decision of the court of appeals and find that the trial court properly granted Hagen's motion for summary judgment dismissing Lisa's claim.

■

The question of whether a duty exists presents an issue of law. *Ollerman v. O'Rourke Co., Inc.,* 94 Wis. 2d 17, 27, 288 N.W.2d 95 (1980). An insurance agent has no affirmative duty, absent a statutory obligation or special circumstances, to inform an insured about the availability or adequacy of insurance coverage. *See Nelson,* 155 Wis. 2d at 682; *See also Lenz Sales & Service v. Wilson Mut. Ins. Co.,* 175 Wis. 2d 249, 255, 499 N.W.2d 229 (Ct. App. 1993). No statute imposed a duty on Hagen to advise Lisa's concerning the liability limits of its inventory insurance. Accordingly, unless special circumstances existed, Hagen had no such duty.

■

In *Nelson,* 155 Wis. 2d at 683–84, this court recognized three special circumstances that might create a duty on the part of an insurance agent to advise an

insured about coverage: 1) an express agreement between the agent and the insured; 2) a long established relationship of entrustment from which it clearly appears that the agent appreciated the duty of giving advice and the agent received compensation for this consultation and advice beyond the agent's standard commission; and 3) the agent held himself or herself out as being a highly-skilled insurance expert, and the insured relied on the expertise of the agent to the insured's detriment. In this case, Lisa's has not claimed that it had an express agreement with Hagen that required him to provide advice concerning insurance coverage.

Lisa's and Hagen—or at least the Hagen Insurance Agency and its predecessor the Maas Agency—certainly had a long established relationship, dating back to before 1976. However, the relationship was never one of "entrustment." Mrs. Adamany, by her own admission, rarely, if ever, spoke to Hagen. On only two occasions did she, or another representative of Lisa's, discuss changes in insurance coverage with Hagen. In both instances, Lisa's had a very specific change in mind and merely requested that Hagen implement that change. Mrs. Adamany never once asked Hagen for advice. Furthermore, there is no evidence in the record from which "it clearly appears [that Hagen] appreciated the duty of giving advice." *See id.* at 683. Finally, it is uncontroverted that Hagen never received any compensation for advice or consultation beyond his standard commission for selling a policy. Thus, Lisa's has failed to demonstrate that this long established relationship created a duty on Hagen's part to advise Lisa's regarding the limits of its insurance coverage.

Lisa's claims that Hagen created a duty to advise Lisa's concerning the limits of Lisa's insurance coverage by holding himself out as being a highly-skilled insurance expert. As evidence of this, Lisa's points to Hagen's newspaper advertisements, his Yellow Pages ads, national Big I ads, various magazine articles and various insurance manuals.

For the most part, Hagen's own advertisements are merely standard ads for insurance agents. He only mentions the word "advice" in one of these ads. None of the ads claim that Hagen is an insurance expert or that he will advise clients about the appropriate limits of coverage. For the most part, Hagen's ads stress that independent agents are able to choose between policies to find the best price—just as Hagen did for Lisa's.

The national Big I ads are similar to Hagen's personal ads. One of them, featuring actor Raymond Burr, states that an independent agent can "offer you expert advice on the best coverage at the best price." Again, the emphasis of the ad is that independent agents, unlike captive agents, represent more than one insurer and therefore can choose between various policies.

The insurance journal articles that Lisa's offered as evidence make no claims about Hagen's personal expertise. Rather, one of these articles discusses advertising by independent agents and another discusses the coverage available in property insurance policies. The insurance industry manuals discussed by Lisa's do discuss the duties of an independent agent. However, these are not enforceable standards of professional conduct. They are merely suggestions and "exhortatory expression[s] of common ideals." *See Tackes v. Milwaukee Carpenters Health Fund,* 164 Wis. 2d 707, 715, 476 N.W.2d 311 (Ct. App. 1991). Furthermore, there is no evidence that any representative of Lisa's relied on

574

these articles and manuals as evidence of Hagen's expertise. In fact, there is no evidence that any representative of Lisa's laid eyes on these materials until this lawsuit began.

The sum total of this evidence does not lead this court to conclude that Hagen held himself "out as being a highly-skilled insurance expert" or that Lisa's "reli[ed] on the expertise of the agent to [Lisa's] detriment." *See Nelson,* 155 Wis. 2d at 684. Hagen made no claim that he would advise Lisa's concerning the appropriate limits for the store's insurance coverage. For the most part, all that he claimed was that as an independent agent, he would attempt to select the best policy at the best price. This he did when he switched insurers from Heritage to Home Mutual. Thus, we find that Hagen did not create a duty to advise Lisa's about policy limits by holding himself out as an insurance expert.

■

Finally, Lisa's claims, and the court of appeals agreed, that Hagen's advertising, coupled with his taking control of Lisa's insurance needs by switching policies, created a duty to advise Lisa's about its personal property insurance limits. We reject this argument. Hagen switched insurers strictly to get the same coverage at a better price for Lisa's. This is exactly what he claimed he would do. The evidence in the record suggests that the coverage provided by the Home Mutual policy was identical to that provided by the Heritage policy, except for the added peak season endorsement. This bonus endorsement did not change Lisa's inventory coverage at all and did not add any cost to the policy. Had Lisa's insured her inventory for its average total value, the Home Mutual policy would have provided better coverage at a better rate than the

Heritage policy. However, because Lisa's chose not to fully insure its personal property—not only at the time of the fire but for several years prior to that time—the Home Mutual policy in fact provided exactly the same coverage as the Heritage policy. Hence, we hold that Hagen's taking control of Lisa's insurance needs by switching carriers, even coupled with his advertising, did not create a duty on his part to advise Lisa's about the limits of her personal property insurance coverage.

In *Nelson,* 155 Wis. 2d at 679, this court acknowledged that when we resolve a question of duty, we are essentially making a policy determination. Policy considerations also weigh against imposing a duty on Hagen to advise Lisa's about coverage limits. First, imposing such a duty would remove any burden from the insured to take care of her own financial needs. *See id.* at 681. At her deposition, Mrs. Adamany stated that she "never paid any attention to" the limits of liability of her insurance. As the president and shareholder of a corporation—no matter how small—Mrs. Adamany cannot ignore her insurance needs entirely and rely on an insurance agent to insure that her inventory coverage is adequate.

Furthermore, in this case, the insured "kn[ew] the extent of [her] personal assets and [her] ability to pay better than the insurance agent." *See id.* at 681–82. Lisa's claims that an insured is more likely to know what coverage limits he or she needs for automobile insurance, as in *Nelson,* than for inventory insurance. This argument contradicts common sense. The average person purchasing automobile insurance may have no idea how much damage a car accident may cause. However, Mrs. Adamany admitted that she took an annual inventory of the store. Hence, she had at her disposal the exact information necessary to choose the proper

limits of liability for her inventory insurance. Unfortunately for Lisa's, she "never paid any attention to it" and failed to pass this information along to Hagen.

Finally, imposing such a duty on agents "could afford insureds the opportunity to insure after the loss by merely asserting they would have bought the additional coverage [or, in this case, increased their liability limits] had it been offered." *Id.* at 682. Lisa's is now attempting to do just that. In the six years prior to the fire, Lisa's ignored its insurance needs. Mrs. Adamany admitted that she never reviewed Lisa's policies. In addition, she did not seek advice or assistance. Now that Lisa's has suffered a loss, Mrs. Adamany cannot claim that she would have purchased more insurance if Hagen had only advised her to do so.

In *Nelson,* 155 Wis. 2d at 685, we stated: "We decline to impose upon the agent an ongoing duty under these circumstances to advise an insured regarding coverage for an indefinite period of time." In this case, at least six years elapsed between the first time Hagen procured a policy insuring Lisa's inventory and the time of the fire. At least two years elapsed between the time Hagen switched carriers for Lisa's and the time of the fire. During these periods of time, Lisa's made no effort to read its policy or insure the adequacy of its policy limits. We now decline to impose a duty upon Hagen to advise Lisa's concerning the liability limits of its personal property coverage.

We hold that no special circumstances existed in this case to create a duty on Hagen's part to advise Lisa's about the limits of its inventory insurance coverage. Absent a request from Lisa's to raise the limits, Hagen's only duty was to insure that Lisa's coverage remained in effect. He fulfilled this duty. Accordingly, we find that the trial court properly granted Hagen's

motion for summary judgment dismissing Lisa's claim. Therefore, we reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.