1 F.3d 1244
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 AMERICAN COATING TECHNOLOGY, INC. Petitioner-Appellant,
v.
AMERICAN AGENCY, INC., and Maurice L. Anderson Respondent-Appellee.
 No. 92-3265.
 United States Court of Appeals, Seventh Circuit.
 Argued April 16, 1993.
Decided July 29, 1993.
Rehearing Denied Aug. 20, 1993.
 
 Before COFFEY, EASTERBROOK, ILANA DIAMOND ROVNER, Circuit Judges.
 
 ORDER
 
 1
 American Coating Technology, Inc. (ACT) appeals a district court order granting summary judgment in favor of American Insurance Company, Inc. (American Insurance), and Maurice L. Anderson, its agent. We affirm.
 
 I. STANDARD OF REVIEW
 
 2
 We review a grant or denial of summary judgment de novo. Pro-Eco v. Bd. of Comm'rs of Jay County, Indiana, 956 F.2d 635, 637 (7th Cir.1992). Summary judgment is proper when there is no dispute of material fact and the moving party is entitled to judgment as a matter of law. Id.; Fed.R.Civ.P. 56(c).
 
 II. FACTS
 
 3
 ACT is a specialty paper coating company that operates a warehouse and production facility in Hudson, Wisconsin. On June 23, 1991, a fire destroyed the plant. At that time, the plant was insured by a $900,000 replacement loss policy that ACT had purchased from Anderson while he was employed by American Insurance, a Minnesota insurance brokerage corporation. Alleging that it had sustained losses in the fire that far exceeded the policy limits, ACT brought a diversity suit against defendants on the theory that Anderson had failed to adequately advise ACT with respect to the extent of insurance coverage it should purchase. Count I sought recovery for negligence, and Count II pleaded a claim for "breach of special relationship."
 
 
 4
 As the district court determined, the relevant circumstances surrounding the insurance purchase are undisputed. Shortly after Anderson began to work for American Insurance, he placed a "cold" (unsolicited) call to Nabil Nasser, President of ACT, and asked whether he would be interested in a competitive quote on his business insurance. During the conversation, Anderson advised Nasser that he specialized in writing business insurance and considered himself to be an expert in that area.
 
 
 5
 In late November 1990, Anderson met with Jack Reichert, an ACT employee, to discuss ACT's application for insurance. At the meeting, Reichert supplied information as to ACT's existing coverage under a policy issued by Travelers Insurance Company. On February 20, 1991, at a meeting with Nasser and Reichert, Anderson presented ACT with a proposal of a CIGNA insurance policy that provided for $900,000 replacement cost coverage. At that time, Nasser indicated that he believed that the policy limits were insufficient, and asked Anderson what it would cost to double his coverage. Anderson stated that the increased coverage would at least double his premium. After the meeting, Nasser asked Anderson to provide him with specific price quotations.
 
 
 6
 Subsequently, a policy of insurance with CIGNA was issued to ACT. The policy became effective on February 20, 1991, although it was not received until April 1991. Thereafter, Anderson met with Edward Shelleny, ACT's Chief Operating Officer, and they discussed the terms and conditions of the policy, and the $900,000 replacement cost policy limit.
 
 III. ANALYSIS
 
 7
 Neither party disputes that Wisconsin law supplies the rule of decision in this case, which we are bound to apply under Erie R.R. v. Tompkins, 304 U.S. 64 (1938). Under Wisconsin law, consistent with the rule in a majority of jurisdictions, an insurance agency has no general duty to advise a customer as to the adequacy of insurance coverage. Nelson v. Davidson, 456 N.W.3d 343 (1990). In rejecting the imposition of such a duty, the Wisconsin court observed:
 
 
 8
 [I]mposing liability on insurers for failure to advise clients of available coverage would remove any burden from the insured to take care of his or her own financial needs and expectations in entering the marketplace and choosing from the competitive products available.... [A]dopting such a rule would transform insurance companies from a competitive industry "into personal financial counselors or guardians of the insured, a result we believe goes well beyond anything required by law or dictated by common sense."
 
 
 9
 Id. at 346 (citing Dubreuil v. Allstate Ins. Co., 511 A.2d 300, 302 (R.I.1986) (quoting Gibson v. Gov't. Employees Ins. Co., 162 Cal.App.3d 411, 451-52, 208 Cal.Rptr. 511 (1984)).
 
 
 10
 As the Nelson court indicated, however, an exception might exist where a "special relationship" is present between agent and insured which is characterized by "something more than the standard insured-insurer relationship....) Id. at 347. The opinion describes various scenarios that might constitute such a relationship, including the existence of an express agreement to advise; the receipt of compensation, apart from premiums, for such consultation; the existence of a long-term established relationship of trust where it clearly appears that the agent appreciates the duty of giving advice; or, where an agent represents that he is a highly skilled insurance expert coupled with an insured's detrimental reliance on the advice given. Id.
 
 
 11
 ACT contends that numerous factual issues exist in this case and that disposition by way of summary judgment is improper. Specifically, ACT argues that sufficient evidence exists to create a triable issue of fact as to the existence of a special relationship between it and Anderson with respect to Anderson's representation that he was an insurance expert specializing in business coverage. Alternatively, ACT argues that Anderson's status as an independent insurance broker creates a special relationship and imposes on him a duty to use at least reasonable care in his acts on behalf of ACT.
 
 
 12
 We disagree. First, as the Nelson opinion makes clear, whether a legal duty exists is a question of law. Id. at 345. Furthermore, two recent decisions of Wisconsin's Court of Appeals are controlling and foreclose the arguments advanced by ACT. See Tippecanoe Beverages v. S.A. El Aguila Brewing Co., 833 F.2d 633, 638-39 (7th Cir.1987) (decision of state intermediate appellate court is to be treated as authoritative absent strong reason to believe state's highest court would reject decision).
 
 
 13
 The effect of an insurance agent holding himself out as an expert was addressed in Meyer v. Norgaard, 467 N.W.2d 141 (Wis.Ct.App.), pet. for rev. denied (Wis.1991). There, plaintiffs brought suit based on an insurance agent's alleged failure to adequately evaluate an insured's uninsured motorist coverage and to advise of the need for greater policy limits. Plaintiffs contended a special relationship existed between them and the agent in that the agent had made an individualized assessment of their insurance needs while professing to be a highly skilled insurance specialist. Id. at 144. Holding that such facts were insufficient to create a special relationship between the insurer and the insured, the court reasoned that "[n]ot every specialist is subject to [the special relationship] exception. Rather, the specialization must be such that the agent promotes himself as an insurance consultant and assumes an obligation to advise the insured beyond that of the standard insurance agent." Id. Accordingly, the district court did not err in holding that the representations of Anderson with respect to his expertise, without more, were insufficient as a matter of law to create an affirmative duty that he advise ACT with respect to the adequacy of its insurance coverage.
 
 
 14
 ACT's alternative contention is that a special relationship existed between it and Anderson by virtue of Anderson's status as an independent insurance broker. Again, existing Wisconsin law precludes this argument. In Tackes v. Milwaukee Carpenters District Council Health Fund, 476 N.W.2d 311, 314 (Wis.Ct.App.), pet. for rev. denied (Wis.1991), the Wisconsin Court of Appeals determined that one's status as an "independent" agent did not give rise to the existence of a special relationship under Nelson as a matter of law. As the court observed, a contrary rule "would impose potential liability on every independent agent for the failure to volunteer advice, and would thus largely eviscerate, for a significant segment of the industry, Nelson's balancing of public-policy interests." Id. Accordingly, the district court correctly determined that Anderson's status as an independent insurance broker did not create a duty on his part to advise ACT with respect to the insurance coverage it should purchase.
 
 
 15
 No triable issue of fact exists in this case and the defendants are entitled to summary judgment as a matter of law. The judgment of the district court is, therefore,
 
 
 16
 AFFIRMED.