**Kristin BEUL, Klaus Beul, and Petra Beul, Plaintiffs,**

v.

**ASSE INTERNATIONAL, INC., and Admiral Insurance Company, Defendants.**

No. 98–C–426.

United States District Court, E.D. Wisconsin.

July 6, 1999.

---

Heiner Giese, Giese & Weden Law Offices, Milwaukee, WI, for plaintiff.

Timothy J. Strattner, Schellinger & Doyle, D.C., Brookfield, WI, for defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

On May 6, 1998, Kristin Beul and her parents, Klaus Beul and Petra Beul, all adult residents of Germany, filed this action over which the court has diversity jurisdiction against the defendants. Defendant ASSE International, Inc, ["ASSE"], is a foreign corporation which provides cross-cultural and educational programs for foreign students in the United States and abroad. Defendant Admiral Insurance Company is ASSE's insurer.

Presently before the court is the defendants' motion for summary judgment on the issue of causation under Rule 56(c), Federal Rules of Civil Procedure. The motion will be granted as to certain of the plaintiffs' claims and denied as to others.

## I. SUMMARY JUDGMENT STANDARD

A motion for summary judgment will be granted when there are no genuine issues as to material fact and the movant is entitled to judgment as a matter of law. *See* Rule 56(c), Federal Rules of Civil Procedure. Under Rule 56(c), the movant must show the following: (1) no genuine issue of material fact exists, and (2) its entitlement to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Only "genuine" issues of "material" fact will defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

As defined by the United States Supreme Court, "material" facts are those facts which, under the governing substantive law, "might affect the outcome of the suit." *Id.* at 248, 106 S.Ct. 2505. A dispute over such material facts is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## II. UNDISPUTED FACTS

The defendants included with their motion for summary judgment proposed findings of fact which they believed constituted the factual propositions upon which there is no genuine issue of material fact as required under Local Rule 6.05(a). The plaintiffs filed objections to the proposed factual assertions and filed their own proposed factual findings as permitted under Local Rule 6.05(b)(2). The defendants, in turn, filed a reply to the plaintiffs' submission. *See* Local Rule 6.05(c).

There is no genuine dispute concerning the following facts. In 1995, Kristin Beul ["Kristin"], whose date of birth is December 26, 1978, lived with her parents in

Berlin, Germany. (Defendants' Proposed Findings of Fact ["DPFF"] at ¶ 1).

Kristin applied to a German student exchange program, Internationale Spach-und Studienreisen ["IST"], in Heidelberg, Germany, to attend high school in the United States. (Id. at ¶ 2.) ASSE is a non-profit corporation with its principal offices in Laguna Beach, California; it operates visitor-exchange programs with a number of organizations located in other countries. (Id. at ¶ 3.) Pursuant to an agreement with IST, ASSE arranged to place Kristin with a "host family" in the United States in order for Kristin to live and attend high school in the United States for the 1995–96 school year. (Id. at ¶ 4.)

In July 1995, Richard and Cheryl Bruce, who resided in Fort Atkinson, Wisconsin, applied to be a host family for a German student participating in ASSE's student exchange program for the 1995–96 school year. (DPFF at ¶ 5; Plaintiffs' Response to DPFF ["Plaintiffs' Response"] ¶ 5.) ASSE's area representative for southeastern Wisconsin, Marianne Breber, met with the Bruce family at their home in Fort Atkinson and approved them as a host family for Kristin. (DPFF at ¶ 6.) Neither Richard nor Cheryl Bruce had any criminal record, court judgments, driver's violations or any other kind of police contact which would have caused any reasonable person to reject the Bruce family as a host family. (Id. at ¶ 7.)

On September 7, 1995, Kristin arrived in Wisconsin and took up residence with Mr. and Mrs. Bruce and their daughter, Angela. (DPFF at ¶ 8.) On September 12, 1995, Ms. Breber met in Janesville, Wisconsin with Kristin and another foreign exchange student whom she was supervising for an orientation. At all times material to this matter, Kristin had the name, address and telephone number of Ms. Breber and understood that she could contact Ms. Breber at any time for counseling or assistance. (DPFF at ¶ 9; Plaintiffs' Response at ¶ 9.)

While she resided in the Bruce home, Kristin made weekly telephone calls to her parents in Germany and wrote letters approximately once a month. (DPFF at ¶ 10.) During her residence in the Bruce home, Kristin was a student at Fort Atkinson High School and achieved a 3.547 grade point average for the year. Aside from her participation for a few weeks in volleyball early in the school year, Kristin did not participate in any extracurricular activities. (DPFF at ¶ 11; Plaintiffs' Response at ¶ 11.)

During Kristin's stay in the Bruce household, Ms. Breber telephoned the Bruce household to speak with Kristin and members of the Bruce family on a monthly basis to inquire how things were progressing with Kristin's student exchange experience. (DPFF at ¶ 12.) Specifically, Ms. Breber telephoned the Bruce family on the following dates: October 13, 1995, November 26, 1995 and December 29, 1995. (Plaintiffs' Response at ¶ 12.) Kristin has stated that Ms. Breber did not speak to her during the December 29, 1995, contact call but spoke to Cheryl Bruce instead. (Plaintiffs' Additional Proposed Findings of Fact ["PAPFF"] at ¶ 40.) On January 21, 1996, Ms. Breber attended dinner at the Bruce residence. Kristin, Richard Bruce, Cheryl Bruce and Angela Bruce were present at the dinner. (DPFF at ¶ 13; Plaintiffs' Response at ¶ 13.)

In February 1996, Marianne Breber was informed by the Bruce family that they were having marital difficulties and that they intended to separate. (DPFF at ¶ 14.) As a result, Ms. Breber made arrangements to remove Kristin from the Bruce household on February 22, 1996. (Id.) On February 22, 1996, Ms. Breber, accompanied by a male friend and by a Jefferson County sheriff's deputy, went to the Bruce household to remove Kristin from the home. (Id. at ¶ 15.) Kristin did not want to leave. (Id.) On that same day, Ms. Breber visited Fort Atkinson High School to inform the school staff that Kristin would be living with Ms. Breber for

some period of time at her home in Greenfield, Wisconsin. (Id. at ¶ 16.) As a result, Kristin was caused to miss some school. (Id.) Upon visiting the high school, Ms. Breber discovered that Kristin's attendance record at the school had progressively worsened. (Id.)

Kristin lived with Ms. Breber until February 28, 1996, when she was placed with a new host family in Fort Atkinson, Stanley and Darlene Bruch. (Id. at ¶ 17.) When Kristin was placed with the Bruch family, Ms. Breber instructed her not to have any further contact with Richard Bruce or Cheryl Bruce for at least one month. (Id. at ¶ 18.)

In April 1996, it was learned that Kristin and Richard Bruce had become sexually intimate and had engaged in sexual intercourse on a number of occasions between November 17, 1995, and the beginning of April 1996. (DPFF at ¶ 19.) At no time between the middle of November 1995 and the beginning of April 1996 did Kristin ever tell anyone, including her parents, her friends in Germany, her classmates or teachers at Fort Atkinson High School or Ms. Breber that she ever felt threatened or pressured by anyone in the Bruce household or that she and Richard Bruce had engaged in sexual intercourse or other sexual conduct. (DPFF at ¶ 20.) During her weekly telephone calls to her parents, Kristin never gave her parents any reason to believe that she was being pressured or threatened by anyone in the Bruce household or that she and Richard Bruce had engaged in sexual intercourse or other sexual conduct. (Id. at ¶ 21.)

On a number of occasions in November and December 1995, Richard Bruce called Kristin's school to report her absent and then kept her home for the purpose of engaging in intimate physical contact or sexual intercourse with her. (PAPFF at ¶ 41.) At no time before February 22, 1996, did any teacher, administrator or staff person at Fort Atkinson High School contact Ms. Breber or anyone else at ASSE to report any concern with Kristin's

attendance, grades or well-being. (Id. at ¶ 22.) In March 1996, while residing with Mr. and Mrs. Bruch, Kristin visited with Richard Bruce on several occasions and on one occasion engaged in sexual intercourse with Richard Bruce without disclosure to others. (DPFF at ¶ 23 and Plaintiffs' Response at ¶ 23.)

On or about April 10, 1996, Cheryl Bruce followed her estranged husband, Richard Bruce, to the Shopko Pharmacy. After he entered the store, Mrs. Bruce took love letters from Kristin to Mr. Bruce which were in Mr. Bruce's vehicle. (DPFF at ¶ 25.) Mrs. Bruce took the letters to the principal of Fort Atkinson High School. (Id.) The principal of Fort Atkinson High School, Paul Pelnar, reported the suspicions of a sexual relationship between Richard Bruce and Kristin, who was then 17 years old, to the Jefferson County department of human services on or about April 10, 1996. (Id. at ¶ 26.)

On or about April 10, 1996, the Jefferson County department of human services referred the report of an inappropriate sexual relationship between Mr. Bruce and Kristin to the Jefferson County sheriff's department for investigation and possible criminal charges against Richard Bruce. (Id. at ¶ 27.) A Jefferson County human services social worker interviewed and counseled Kristin on several occasions. (Id.)

On or about April 11, 1996, Principal Pelnar wrote a letter to ASSE advising ASSE of the alleged improper sexual relationship and of the investigation by Wisconsin authorities. (Id. at ¶ 28.) ASSE contacted IST and asked IST to inform Kristin's parents of the allegations of the improper sexual relationship between Mr. Bruce and Kristin. (Id. at ¶ 29.) IST contacted Petra Beul on April 12, 1996, and informed her of the allegations. (Id. at ¶ 30.) On April 24, 1996, Mr. Bruce committed suicide. (Id. at 32.)

Immediately after Mr. Bruce's death, Stanley and Darlene Bruch took Kristin to

be examined by a physician pursuant to instructions from ASSE. (Id. at 35.) The Beuls retained a lawyer in Wisconsin who arranged for Kristin to see a psychotherapist/counselor on May 21, 1996. (Id. at 33.) However, Kristin did not have any further counseling or psychotherapy intervention with anyone until she returned to Germany in the middle of June 1996.(Id.) No physician, psychologist, psychotherapist, social worker or other counselor told anyone at ASSE that it was necessary for Kristin to obtain counseling prior to her return to Germany in the middle of June 1996. (Id. at ¶ 36.) There is no evidence that any delay in medical care and/or counseling has caused any harm to Kristin. (Id.)

ASSE received in excess of $2000 out of the funds paid by Kristin's parents to IST for ASSE's services in finding a host family in the United States and acting as Kristin's sponsor. (PAPFF at ¶ 37.) Ms. Breber received a fixed fee of $300 from ASSE as reimbursement for the expenses she incurred when acting as area representative for Kristin during her stay in the United States. (Id. at ¶ 38; Defendants' Reply to Plaintiffs' Additional Proposed Findings of Fact ["Defendants' Reply"] p. 2.) Ms. Breber visited Kristin at the Bruce house within a month of two of her arrival. (Defendants' Reply at p. 2; Ex. N. to Supplementary Aff. of Strattner at p. 16.)

Ms. Breber did not receive any training, formal or otherwise, from ASSE on how to do her job as area representative, but she did receive an area representative manual. (PAPFF at ¶ 43.) The manual contains the following statement on page 143 at paragraph 4 (emphasis in original): "Have PRIVATE contact with each student at least once a month." (Id. at ¶ 44.) Paragraph 3 on page 143 states that the area representative should organize and attend at least three social or recreational activities for the student and host family at which the ASSE representative "should find time to talk to each of your students privately." (Id.)

The last paragraph on page 143 of the manual states that the area representative should:

> develop a code with [his/her] students so that they can answer even in the presence of the host family. On a rating scale of 1 to 10, with 10 being the best, ask them to give you a number to indicate how things are going.

(Id at ¶ 45.)

There is no evidence that Ms. Breber ever developed such a code with Kristin. (Id.) In addition, the manual instructs the area representative as follows regarding school contact:

> Check with the school administrator so that he/she is aware of your presence and concern. Call a month after the student's arrival and then again every month or six weeks (especially before completing the evaluation forms) to let the school know that you and ASSE are there for support.

(Id. at ¶ 46.)

Between the time Kristin arrived at Fort Atkinson High School in September 1995 until February 22, 1996, Ms. Breber never called or wrote to any school administrator or teacher to inquire about Kristin's attendance. (Id. at ¶ 47.) At no time prior to April 12, 1996, did Ms. Breber ever ask Kristin whether there was any contact of a sexual nature between her and Richard Bruce. (Id. at ¶ 48.)

Prior to the time when the Fort Atkinson High School principal advised ASSE on April 11, 1996 of the improper sexual contact, Ms. Breber had never asked Richard Bruce, Cheryl Bruce or Angela Bruce whether there was any contact of a sexual nature between Kristin and Richard Bruce. (Id. at ¶ 49.) The documents produced by ASSE show that the first written notification to Kristin's parents that she would be moved out of the Bruce home was a letter from the German partner organization, IST, to Mr. and Mrs. Beul dated February 26, 1996. (Id. at ¶ 50.)

The plaintiffs' expert witness Dr. James L. Paquette, a psychologist, states in his report dated April 18, 1999, that Kristin suffers from "continuing posttraumatic stress disorder features, bulimia, and self-mutilation, a correlate of depressive disorder with devalued self-concept." (Id. at ¶ 54.) Kristin engaged in acts of self-mutilation and suicidal ideation while in the Bruce household and afterwards, continuing until April 1999. (Id. at ¶ 55.)

### III. LAW AND ANALYSIS

The plaintiffs allege in their complaint that the actions of Richard Bruce toward Kristin constituted sexual abuse, molestation and assault. Specifically, they contend that Richard Bruce exploited his substitute parent/child relationship with Kristin and his adult status in coercing Kristin to engage in sexual acts with him. The complaint contains three "causes of action": (1) negligence; (2) violation of federal regulations relating to exchange-visitor programs; and (3) the derivative claim by Klaus and Petra Beul for the loss of society and companionship of their daughter, Kristin. The defendants argue that all three claims must be dismissed because the plaintiffs are unable to show the essential element of legal causation as to each claim.

### A. Negligence

■ Under Wisconsin law, the following elements are essential to constitute a cause of action for negligence:

(1) a duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury.

See Coffey v. City of Milwaukee, 74 Wis.2d 526, 531, 247 N.W.2d 132 (1976); Nelson v. Davidson, 155 Wis.2d 674, 679, 456 N.W.2d 343 (1990); and Westphal v. E.I. du Pont de Nemours & Co., Inc., 192 Wis.2d 347, 364, 531 N.W.2d 386 (Wis.Ct.App.1995). "[T]here can be no liability predicated upon a breach of duty unless it is deter-mined that such breach was a legal cause of the plaintiff's injuries." Kendrick v. East Delavan Baptist Church, 886 F.Supp. 1465, 1476 (E.D.Wis.1995) (citing Johnson v. Misericordia Community Hospital, 97 Wis.2d 521, 560, 294 N.W.2d 501 (Wis.Ct. App.1980)). The concept of legal cause consists of two elements: "cause-in-fact" and "proximate cause." Johnson, 97 Wis.2d at 560 n. 20, 294 N.W.2d 501. The test of "cause in fact" in Wisconsin is whether the defendant's alleged negligence was a "substantial factor" in contributing to the harm from which damages are claimed. Osborne v. Montgomery, 203 Wis. 223, 233–34, 234 N.W. 372 (1931).

■ Whether a negligent act is a substantial factor in contributing to an injury is ordinarily a question left to the jury, with the jury applying the reasonable person standard to the facts presented. See Trotter v. Anderson, 417 F.2d 1191 (7th Cir.1969). The presence or absence of causation is generally regarded as an "inference to be drawn from the circumstances by the trier of fact." Johnson, 97 Wis.2d at 560, 294 N.W.2d 501.

■ In the complaint, the plaintiffs identify seven acts or omissions on the part of ASSE which allegedly constitute negligence. The defendants argue that, even assuming that the plaintiff establishes both a duty and breach of that duty with respect to each of the seven acts or omissions, they are entitled to summary judgment dismissing the negligence claims because the plaintiffs are unable to present evidence from which a reasonable jury could find a cause-in-fact relationship between the breach and the harm suffered by the plaintiffs. The essential question presented by this motion is whether the court should find an absence of legal cause between ASSE's violations of its duties and Kristin's injury. ASSE argues that one must engage in speculation to find a legal connection between its negligence and the girl's harm. The plaintiffs respond that the defendants' conduct was a

substantial factor in her injury and that a reasonable jury could so find on the facts in the present record. The plaintiffs also point out that there can be more than one cause of an injury and that foreseeability is not the test of proximate cause.

The court will address each of the seven enumerated acts or omissions below.

### 1. Failure to Adequately and Timely Monitor Kristin's School Attendance

The plaintiffs contend that the defendants violated their duty to adequately monitor Kristin's school attendance and are negligent as a result. According to the defendants, ASSE's breach of this duty, if any, cannot be said to be a substantial factor in causing harm to the plaintiffs because there is no evidence that Ms. Breber would have discovered the inappropriate sexual relationship between Kristin and Mr. Bruce had she checked on Kristin's attendance.

In response, the plaintiffs assert that had Ms. Breber checked on Kristin's school attendance record as she had a duty to do, Ms. Breber would have discovered Kristin's frequent absences from school and the fact that Mr. Bruce was the one calling in to excuse her. The plaintiffs argue that this may have raised a suspicion as to Richard Bruce's motives which may have lead to more questioning of Kristin and the Bruce family.

The plaintiffs' correctly note that a reasonable jury may believe that an inquiry by Ms. Breber into Kristin's attendance record would have raised a suspicion as to Mr. Bruce's motives, or may have lead to a personal private visit with Kristin to find out why Kristin was missing so much school.

The ASSE manual expressly directed their representative, (Ms. Breber) to call the school administrator within a month after the student's arrival "and then again every six weeks." This express direction could reasonably be deemed to have as its purpose a means of discovering whether anything was seriously amiss with the visiting student. It is not enough to argue that the representative could not foresee the discovery of the sexual relationship. The jury could well believe that compliance with this duty was designed for the express reason of ferreting out any problems. This court cannot rule as a matter of law that such omission on the part of Ms. Breber was not a substantial factor in the cause of Kristin's injury.

The defendants are not entitled to summary judgment as to the plaintiffs' claim that ASSE was negligent in failing to monitor adequately and timely Kristin's school attendance.

### 2. ASSE's Failure Properly to Screen and Investigate the Bruce Family as a "Host Family"

The plaintiffs allege that ASSE was negligent in "failing to properly screen and investigate the Bruce family and Richard Bruce in particular with respect to whether said family and Richard Bruce would be suitable hosts and caretakers for plaintiff K.B." (Second Amended Complaint at ¶ 20.A.) The defendants assert that the plaintiffs cannot meet their burden of establishing a cause-in-fact relationship between any breach of such duty and the harm suffered by Kristin because there is no evidence that a full-blown background check would have turned up any information which would have lead ASSE to refuse to allow the Bruce family to become a host family in the student exchange program.

The plaintiffs acknowledge that "no evidence has yet been found which shows a preexisting character defect in either Richard or Cheryl Bruce, or something of an adverse nature in their background, which would have precluded ASSE from choosing them as host parents." (Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment at p. 11.) In the absence of any such evidence, I find that no reasonable jury could find that the ASSE's failure to properly screen and investigate the

Bruce family was the cause in fact of the harm suffered by Kristin. In my opinion, the plaintiffs' statement in their opposition brief that they do not intend to develop such evidence at trial to prove "a separate element of negligence" is an admission of the evidentiary weakness of their negligence claim with respect to this asserted duty.

### 3. Failure to Follow–Up with Adequate Personal Visits, Telephone Calls and Supervision

The plaintiffs allege that ASSE was negligent in failing to maintain, presumably through its area representative, Ms. Breber, close enough contact with Kristin to prevent the harm that she suffered at the hands of Mr. Bruce. In order to survive summary judgment, the plaintiffs must present sufficient evidence from which a reasonable jury could conclude that Ms. Breber's failure to supervise Kristin was a cause-in-fact of the plaintiffs' injuries.

The plaintiffs' version of the facts on this claim are sufficient to enable a reasonable jury to base a finding of causal negligence by the defendants. The jury could reasonable believe had Ms. Breber been in more frequent contact with Kristin or had used some kind of code with Kristin, Kristin may have told ASSE personnel about her sexual relationship with Mr. Bruce. The defendants' argument is that no inference can be made that Kristin would have confided in Ms. Breber.

It is not the court's function on summary judgment to evaluate such an alleged inference as a matter of law. The inference is one for the jury, and I believe that the one advanced by the plaintiffs is not unreasonable as a matter of law.

Because a reasonable jury could conclude that ASSE's failure to supervise Kristin could have caused the plaintiff's injuries, the defendants are not entitled to summary judgment on this claim.

### 4. (a). Failure Timely to Notify Kristin's Parents; and (b). Failure Timely to Contact Legal and Social Service Authorities

Negligence is also alleged against ASSE in failing to notify timely the parents and legal and social service agencies after it became known that Richard Bruce had engaged in improper sexual contact with Kristin.

In response to the defendants' motion the "plaintiffs concede that the current record is sparse as to evidence of such negligence after the time in April 1996 when the truth of the sexual relationship became known." In light of this concession, I find that the defendants are entitled to summary judgment as to these two negligence claims.

### 5. Failure Timely to Arrange for Medical Care or Psychological Counseling For Kristin

With respect to the alleged failure of the defendants timely to arrange for medical care or psychological counseling, the record is completely devoid of any evidence to enable the jury to make a reasonable finding that earlier psychiatric or medical attention for Kristin would have affected her injuries in any way. The evidence that does exist in the record shows that the mental health care consultant who did an initial assessment of Kristin on May 21, 1996, did not recommend any "emergency" intervention nor did Kristin visit that, or any, consultant again during her stay in the United States which ended in the middle of June, 1996. Further, the plaintiffs did not challenge the defendants' proposed finding of fact that any delay in medical care or counseling caused harm to Kristin.

No reasonable jury could find that ASSE's delay in the provision of medical and psychological treatment for Kristin caused her any harm. Hence, the defendants are entitled to summary judgment on this negligence claim.

### 6. ASSE's Failure Adequately to Exercise its In Loco Parentis Obligations Toward Kristin

The plaintiffs' remaining negligence claim which alleges that ASSE failed properly to exercise it in loco parentis obligation toward Kristin is similarly lacking in evidence on the element of causation. In an attempt to explain this theory of negligence in their brief, the plaintiffs argue that ASSE was negligent in its general in loco parentis obligation by not promptly notifying Kristin's parents when Marianne Breber received the telephone call on January 17, 1996, that Cheryl was jealous of Richard's attention to Kristin.

In my opinion, the evidence relied upon by the plaintiffs, even if proved at trial, does not permit the jury to make a reasonable finding that this breach of duty caused Kristin's harm. It is undisputed that by January 17, 1996, the sexual relationship between Richard Bruce and Kristin was well-established. There is not one shred of evidence in the record that any contact between Richard Bruce and Kristin after that date caused any special or unique harm to Kristin. Therefore, the defendants are entitled to summary judgment dismissing this claim.

### B. Violations by ASSE of Federal Regulations Governing Exchange Students

■ In their second cause of action in the second amended complaint, the plaintiffs allege that the defendants violated a number of federal regulations promulgated by the United States Information Agency which govern their obligations and duties as a sponsor of a student exchange program. In particular, the plaintiffs have enumerated six violations by ASSE: (1) failure to have adequate staffing, support services and qualified agents and employees; (2) failure to provide appropriate orientation to Kristin; (3) failure to monitor the progress and welfare of Kristin; (4) failure to notify the United States Information Agency When the Problem with Kristin arose; (5) failure to satisfy a number of other regulatory requirements; and (6) failure to comply with its obligations as a sponsor.

For purposes of this instant motion for summary judgment, the defendants do not contest either the allegations of duty or the alleged violation of those duties. Rather, the defendants argue that they are entitled to summary judgment on this cause of action because there is no evidence that the alleged violation of any of these duties caused any harm to the plaintiffs.

In their brief, the plaintiffs respond to this facet of the defendants' motion:

> The existence of these rules gives the jury additional basis for finding that violation of such rules is a substantial factor when injury results. For example 22 C.F.R. sec. 514.25(d) requires employees and volunteers of ASSE to be "adequately trained." But other than having been a host parent herself, Marianne Breber was handed a manual and received no training at all.

(Plaintiffs' Brief in Opposition at p. 12.) It is within the jury's province to believe that these regulations were established for the benefit and protection of foreign visitors such as Kristin. If the jury also finds noncompliance with these requirements, they could reasonably conclude that such violation was a substantial factor in causing Kristin's injury.

Accordingly, the defendants' motion to dismiss the plaintiffs' second cause of action alleging violation of various regulations will be denied.

### C. Loss of Consortium

■ The loss of consortium claim advanced by Kristin's parents, Petra and Klaus Beul, is derivative in nature and its viability depends upon the validity of the individual injury claims advanced by Kristin. *See Utecht v. Steinagel,* 54 Wis.2d 507, 515, 196 N.W.2d 674 (1972). Thus, having determined that some of the individual claims advanced by Kristin may not

be dismissed, defendants' motion to dismiss the claim for loss of consortium must be denied.

## ORDER

Therefore, IT IS ORDERED that the defendants' motion for summary judgment be and hereby is granted as to the following claims of the plaintiffs: (1) the failure of ASSE properly to screen and investigate the Bruce family as a "host family"; (2) the failure of ASSE timely to notify Kristin's parents and to contact legal and social service authorities; (3) the failure of ASSE timely to arrange for medical care or psychological counseling for Kristin; and, (4) the failure of ASSE adequately to exercise its in loco parentis obligations to Kristin.

IT IS ALSO ORDERED that the aforesaid claims be and hereby are dismissed with prejudice.

IT IS FURTHER ORDERED that the defendants' motion for summary judgment be and hereby is denied as to all other claims of the plaintiffs.

IT IS FURTHER ORDERED that each side shall bear its own costs in connection with this motion.